UNITED STATES DISTRICT COURT<br>
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Glenn Schurr** and **Standard Mapping Service LLC**, a Louisiana corporation,<br>Plaintiffs,<br><br>vs.<br><br>**Jerome Molacek**, **Trapper Marshall**, **Lucas Ragusa**, and<br>**Legend Cartography LLC**,<br>a Minnesota corporation,<br>Defendants. | * * * * * * * * * * * * * | Civil Action No. 2:15-cv-07135<br><br><br><br><br><br>Judge _____<br><br>Magistrate _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DAMAGES AND EQUITABLE AND OTHER RELIEF

Plaintiffs, Glenn Schurr and Standard Mapping Service LLC (hereinafter "Standard Mapping"), a Louisiana corporation, by and through their attorneys of record, allege as follows:

### PARTIES

1.

Plaintiff Glenn Schurr is a Louisiana citizen domiciled in Covington, St. Tammany Parish, Louisiana.

2.

Plaintiff Standard Mapping Service LLC is a Louisiana corporation with its primary office in Covington, St. Tammany Parish, Louisiana.

3.

Defendant Legend Cartography LLC (hereinafter "Legend") is a Minnesota corporation with its primary office in Bemidji, Beltrami County, Minnesota.

4.

Defendant Jerome Molacek (hereinafter "Molacek") is a Minnesota citizen. He is registered as a Manager for Legend and holds himself out as one of the owners of Legend.

5.

Defendant Trapper Marshall (hereinafter "Marshall") is a Minnesota citizen. He holds himself out as one of the owners of Legend.

6.

Lucas Ragusa (hereinafter "Ragusa") is a Louisiana citizen domiciled in Gonzales, Ascension Parish, Louisiana. He acts as a representative of Legend in Louisiana, marketing and selling its products in the state.

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiffs' claims under the Copyright Act, 17 U.S.C. §§ 501, *et seq.* This Court has supplemental jurisdiction of Plaintiffs' claims arising under the laws of the State of Louisiana under 28 U.S.C. § 1367 because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.

This Court has personal jurisdiction over Defendants Molacek, Marshall, Ragusa, and Legend because they have engaged in their misconduct in Louisiana and they have had substantial, specific and systematic contacts with Louisiana, including but not limited to their actions in inflicting harms to a Louisiana citizen and a Louisiana corporation.

9.

Venue is proper pursuant to 28 U.S.C. § 1391© because this Court can exercise personal jurisdiction over each of the Defendants and the harm complained of was directed towards and felt in this district.

**FACTUAL SUMMARY**

10.

Glenn Schurr founded Standard Mapping in 1988. He has created printed navigation maps and charts covering the Louisiana coastline, selling them through Standard Mapping, which has acted as the publisher of Schurr's copyrighted works since it began doing business.

11.

Schurr worked with other employees at Standard Mapping in creating the maps and charts by combining available government survey data, maps, and a multitude of other information sources along with in-house developed illustrations, design work, and proprietary graphics. The process to create these maps and charts requires significant creative resources by Schurr, Standard Mapping and its employees, and this process,

including but not limited to the determination of which sources to use and how to arrange the various data sources, involves the exercise of a significant amount of judgment, expertise, and skill.

12.

Beginning in 1999, Standard Mapping digitized its map products. In 1999, a non-printed, color-enhanced mosaic photo map compilation covering the entire State of Louisiana was used during the Bassmaster Classic in New Orleans to indicate locations of winning catches on the live television broadcast. Standard Mapping's digital mapping products were used again in the 2011 broadcast of the New Orleans Bassmaster Classic.

13.

Beginning in 2004, Standard Mapping digitally geo-rectified its maps, allowing them to be utilized to indicate boat movement and location on Itronix devices and laptop computer screens in real time by integrating FUGAWI software with the digital cartography produced by Standard Mapping.

14.

In 2011 Standard Mapping began selling electronic, secure digital memory cards ("e-cards") which are catered primarily to fisherman and sportsmen who rely on the accuracy and unique depiction of these maps when navigating the state's coastline and waterways. The cards can be inserted into many commercial plotter devices, providing maps which coordinate with the Global Positioning Satellite ("GPS") data received by the plotter.

15.

The e-cards are marketed under various names representing different niche markets and/or geographic focuses, including but not limited to the following exemplar products: "Louisiana East Professional Edition," "Louisiana East Premium Content," "Louisiana One Professional Edition," "Louisiana One Premium Content," "Louisiana One Card," "Louisiana East Card," "EC016 Grande Isle, Timbalier, Cut-Off, Lafitte HDS", and other targeted map cards.

16.

Standard Mapping, in publishing these works, has uniformly provided a copyright notice on all of its printed and digital works. The subject works include but are not limited to various illustrations, maps, navigation charts, points of interest, elevation data, annotations, color corrections, manipulation to ensure uniformity of color, and the like.

17.

Schurr applied for registration with the United States Copyright Office covering its aerial photo map of Lafitte-Myrtle Grove (Louisiana). On May 22, 1995, the Copyright Office granted the application, issuing registration number VA0000726955.

18.

Schurr applied for registration with the United States Copyright Office covering its aerial photo map of Barataria Bay (Louisiana). On May 22, 1995, the Copyright Office granted the application, issuing registration number VA0000683032.

19.

The copyrighted publications referenced in Paragraphs 17 and 18 have been utilized in Standard Mapping's products since the publications were first created on April 1, 1989. Elements of these publications, and derivative works therefrom, have also been utilized and incorporated into the e-cards which Standard Mapping currently markets and sells.

20.

Over the last twenty-seven years, Standard Mapping has engaged in a systematic process of identifying and labeling points of interest, geolocation data, elevation data, and other data it determined would be of importance to its customers, vetting the accuracy of its maps by going out in the field to review the maps, and refining the data and illustrations associated with the maps.

21.

Schurr applied for registration with the United States Copyright Office covering its derivative works in the e-cards, including the entirety of the maps it currently sells and markets to the public in its Louisiana One Card. This application was filed with the United States Copyright Office on December 22, 2015, and the application is currently pending before the office, bearing case number 1-2979736091.

22.

In order to facilitate the needs of its consumers, Standard Mapping entered into a licensing agreement with Navico, Inc. beginning in 2011, which allowed it to sell its mapping content in the proprietary format required by plotters manufactured and sold by

Navico under the Lowrance, Simrad and B&G brand names.

23.

Standard Mapping also entered into a licensing agreement with Raymarine beginning in 2015, allowing it to sell its mapping content in the proprietary format required by plotters manufactured and sold by Raymarine.

24.

Legend first filed as a Limited Liability Company with the Minnesota Secretary of State on March 11, 2014.

25.

Legend portrays itself as a cartographer providing similar digital mapping products to that which Standard Mapping specializes.

26.

Defendants have created and currently market e-cards under various brand names, including but not limited to "Louisiana GeauX Card," "Louisiana Unleashed V1," "North East Louisiana - Unleashed," "Texas Coast - Unleashed," "St. Johns River - Unleashed," "Florida Keys - Unleashed," "Okeechobee - Unleashed," and "Red River Unleashed V1." These e-cards directly compete with the e-cards marketed and sold by Standard Mapping.

27.

Beginning sometime in late 2014 or early 2015, and without any authorization from Standard Mapping, Defendants repeatedly copied portions of Standard Mapping's proprietary copyrighted maps, illustrations, proprietary data, annotations, color corrections,

manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof, incorporating the same into the e-cards which Defendants market and sell.

28.

Beginning sometime in late 2014 or early 2015, and without any authorization from Standard Mapping, Defendants began marketing a Louisiana Unleashed e-card, which partially infringed upon elements of Standard Mapping's copyrights.

29.

On or about February 25, 2015, Marshall called Schurr, representing to be an owner of Legend and acting on its behalf. Among other things, Marshall threatened to copy all of Plaintiffs' works and compete against Standard Mapping by selling substantially similar products at a significantly lower price. Among other things, Marshall told Schurr "I'll be honest with you, I do know how to make our [Legend's] imagery look just like your guys' [Standard Mapping's] now."

30.

On information and belief, at some point, Defendants (either directly or through an agent directly under their control) purchased or otherwise obtained one or more of Standard Mapping's e-cards, enabling them to copy the copyrighted maps and infringe upon Standard Mapping's copyrighted works.

31.

Beginning sometime in or around October 2015, and without any authorization from

Standard Mapping, Defendants began marketing their Louisiana GeauX Card, which contained substantial and widespread infringement of Standard Mapping's copyrighted and derivative works, including but not limited to its unique arrangements of various data sources, illustrations, color corrections, and the like.

32.

Schurr learned about the Louisiana GeauX Card after several customers called him to alert him to its existence. Several of the customers expressed confusion as to the difference between the products or could not identify differences between the products offered by Standard Mapping and Legend.

33.

Standard Mapping has heavily marketed its products since their introduction in the Louisiana market several decades ago. They have done so though various marketing channels, including but not limited to advertising online, at trade shows, and via postings on social media.

34.

Ragusa has held himself out as a representative of Legend, claiming to act on behalf of and for the benefit of Legend on numerous occasions. In this capacity, he has simultaneously praised Legend's products and defamed Standard Mapping's products at trade shows, in meetings with prospective customers, and on social media, including but not limited to posts on Facebook. Some of the social media postings have not just marketed Legend's products, but they have also disparaged Standard Mapping's products

and contained factually inaccurate assertions regarding Standard Mapping's products, history, and differences between the competing products.

35.

Marshall has held himself out as one of the owners of Legend, claiming to act on behalf of and for the benefit of Legend.

36.

Molacek has held himself out as one of the owners of Legend, claiming to act on behalf of and for the benefit of Legend. He has additionally registered as a Manager of Legend with the Minnesota Secretary of State.

37.

On information and belief, Marshall, Molacek and/or Ragusa act as alter egos of Legend, utilizing the corporate form to pursue their own individual business dealings, including but not limited to their wilfully and knowingly committing copyright infringement as alleged in the instant matter.

38.

The similarities between Legend's products to Standard Mapping's proprietary, copyrighted products are so strong that multiple customers of Standard Mapping (both pre-existing and prospective) have contacted it to ask about the differences between the products and, at times, whether the products are different at all.

39.

Defendants' actions as a whole have caused widespread consumer confusion in the

marketplace, and by pricing their infringing products at a significant discount to the prices charged by Standard Mapping (which prices reflect and compensate it for the significant investment of time and resources it has put into its products over several decades), Defendants have created a significant and unfair competitive disadvantage for Standard Mapping.

40.

On information and belief, Defendants willfully and personally took place in the commission of copyright infringement, including copying, distributing and otherwise marketing products which infringed upon Standard Mapping's copyrighted materials. By way of example, Molacek and Marshall were intimately involved in the design and production of infringing products. Additionally, Ragusa acted as a marketer and distributor of the infringing products in Louisiana, actively marketing products he knew infringed upon one or more elements of Plaintiffs' copyrighted work.

41.

Defendants have wrongfully profited from their copying and use of the Standard Mapping proprietary data, illustrations, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials, and Standard Mapping has been harmed as a result therefrom.

42.

On information and belief, after copying elements of Standard Mapping's

copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof, Defendants incorporated this copied material into Legend's e-card products.

43.

Among other methods, Plaintiffs determined that Defendants had copied elements of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof by observing the presence of place names in Legend's digital mapping products.

44.

Among other methods, Plaintiffs determined that Defendants had copied elements of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof by observing the presence of substantially similar gradation of coloring in Legend's map products when compared to the maps created and sold by Standard Mapping; the gradation was done by Schurr.

45.

Among other methods, Plaintiffs determined that Defendants had copied elements of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color

corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof by observing the arrangements and selection of various aerial maps used in the maps, uses of color, gradients, etc.

46.

On or about November 15, 2015, personal counsel for Standard Mapping, Stephen Wright, sent correspondence to Molacek, explaining his belief Defendants have infringed upon the copyrights owned by Schurr and/or Standard Mapping, as well as his belief Defendants were committing unfair trade practices under the Louisiana Unfair Trade Practice Act ("LUTPA"), La. Rev. Stat. §§ 51:140, *et seq*.

47.

On or about November 25, 2015, Molacek sent a response to Wright, expressly denying the allegations raised by Wright. Since this time, Defendants have continued selling products which infringe upon copyrights owned by Schurr and published by Standard Mapping.

**FIRST CAUSE OF ACTION - COPYRIGHT INFRINGEMENT**

48.

Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-47 above.

49.

Plaintiffs own valid copyrights in the unique arrangement and presentation of the

maps, including but not limited to the illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other materials and derivative works thereof, which constitute original creative works.

50.

Plaintiff Schurr has an active and valid copyright registration covering the aerial photo map of Lafitte-Myrtle Grove (Louisiana), registration number VA0000726955.

51.

Plaintiff Schurr has an active and valid copyright registration covering the aerial photo map of Barataria Bay (Louisiana), registration number VA0000683032.

52.

Plaintiffs have filed for and have a pending copyright application covering the maps contained within Standard Mapping's e-cards, which they filed with the United States Copyright Office on December 22, 2015; the application is currently pending before the office, bearing case number 1-2979736091.

53.

On information and belief, without any authorization or consent, Defendants copied and reproduced elements of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof.

54.

On information and belief, without any authorization or consent, Defendants prepared derivative works of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof.

55.

On information and belief, without any authorization or consent, Defendants distributed copies of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof, to the public by sale, lease, or lending in the form of an end user license.

56.

On information and belief, without any authorization or consent, Defendants publicly displayed samples of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof.

57.

On information and belief, without any authorization or consent, Defendants copied elements of Standard Mapping's copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts and data in a unique and novel way, and other copyrighted materials and derivative works thereof, starting in or around late 2014 or early 2015, and Defendants continued to engage in this conduct through and past November 2015.

58.

On information and belief, Defendants willfully and personally took place in the commission of copyright infringement, including copying, distributing and otherwise marketing products which infringed upon Standard Mapping's copyrighted materials.

59.

As a result of Defendants' conduct, Plaintiffs have been harmed and Defendants have wrongfully profited.

**SECOND CAUSE OF ACTION - LUTPA**

60.

Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1-59 above.

61.

Plaintiffs own the copyrighted maps, illustrations, proprietary data, annotations, color corrections, manipulation of color data, incorporation of U.S. Government Survey charts

and data in a unique and novel way, and other copyrighted materials and derivative works thereof contained within Standard Mapping's e-cards.

62.

Defendants have engaged in advertising and marketing in the State of Louisiana which depicts the products of Standard Mapping negatively, while simultaneously misleading Louisiana consumers to believe Legend's product is the sole product of its type.

63.

Defendants have also pressured Standard Mapping to purchase Legend or enter into a "buy-out agreement" for Defendants to cease and desist from marketing their products in Louisiana.

64.

In addition to infringing upon Plaintiffs' copyrights, Defendants have misused proprietary information collected and gathered by Standard Mapping for use in its e-card products.

65.

Such actions constitute unfair methods of competition and/or deceptive acts or practices in the marketplace, all in violation of LUTPA, La. Rev. Stat. §§ 51:1401, *et seq.*

66.

As a result of Defendants' misconduct, Plaintiffs have been injured.

**[please see next page for Prayer for Relief]**

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants as follows:

1. For a preliminary and permanent injunction requiring Defendants to cease selling and deceptively marketing their line of maps and e-cards which infringe upon Plaintiffs' copyrights;

2. For an award of damages and monetary equitable relief in an amount to be proven at trial, comprising the following:

    a. Compensatory damages in the form of Plaintiffs' lost profits and Defendants' wrongful profits and Defendants' unjust enrichment, including through the calculation of a reasonable royalty, in an amount in excess of $150,000.00, pursuant to 17 U.S.C. § 504;

    b. Plaintiffs' costs of suit, including attorney's fees;

    c. Treble damages to the extent allowed under the Louisiana Unfair Trade Practices Act;

    d. Pre-judgment interest to the extent allowed by law; and,

    e. Such other relief and additional relief as this Court deems just and proper.

**[please see next page for Signature of Counsel and Certificate of Service]**

**RESPECTFULLY SUBMITTED ON THIS 28TH DAY OF DECEMBER:**

                                        **BEAHM & GREEN**

                                        */s/Christopher G. Otten*
                                        **Franklin D. Beahm, La. Bar No. 2874**
                                        **Christopher G. Otten, La. Bar No. 32626**
                                        **Kristen L. Burge, La. Bar No. 35686**
                                        145 Robert E. Lee Boulevard
                                        Suite 408
                                        New Orleans, Louisiana 70124
                                        Tel:       (504) 288-2000
                                        Fax:      (504) 288-2099
                                        Email:   frank@beahm.com
                                                              chris@beahm.com
                                                               kristen@beahm.com
                                        Attorneys for Plaintiffs Glenn Schurr and
                                        Standard Mapping LLC

## **CERTIFICATE OF SERVICE**

      I do hereby certify that on this 28th day of December, 2015 I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a Notice of Electronic filing to all interested parties.

                                                            */s/Christopher G. Otten*
                                                            Christopher G. Otten